UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

THE TRAVELERS INDEMNITY COMPANY,

Plaintiff,

-against-

STATE NATIONAL INSURANCE COMPANY,

Defendant.

---

**MEMORANDUM AND ORDER**
23-cv-00496 (LDH) (TAM)

LaSHANN DeARCY HALL, United States District Judge:

Travelers Indemnity Company ("Plaintiff") brings this action against State National Insurance Company ("Defendant") seeking a declaratory judgment that it has no obligation, as Defendant does, to provide additional insured coverage in an underlying personal injury action. Defendant brings a counterclaim for a declaratory judgment as to Plaintiff's obligation regarding the same. Before the Court are the parties' cross-motions for summary judgment, each brought pursuant to Federal Rule of Civil Procedure 56, regarding each party's duty to defend the defendants in the underlying action.

## I.     BACKGROUND[1]

Barr & Barr, Inc. ("Barr & Barr") is a general contractor, which was hired for the Jetro Holdings LLC ("Jetro") Corporate Office Relocation Project (the "Project") at JMDH Real Estate Offices ("JMDH"), in Queens, New York at some time before April 2018. (Rule 56.1

---

[1] The foregoing facts are undisputed unless otherwise noted. Further, facts that were not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 Statement, that fact will be deemed admitted.").

1

Statement of Material Facts ("56.1"), ECF No. 23, ¶ 5.) Construction Resources Corporation ("CRC") is a union pay master, which provides union payroll services. (*Id.* ¶¶ 32–33.) In April 2018, Barr & Barr entered into a subcontract with CRC to provide payroll services for union employees on the Project ("Barr-CRC Subcontract"). (*Id.* ¶ 31.) Specifically, CRC agreed to carry payroll and workman's compensation insurance for Barr & Barr's Superintendent, Peter Santorufo, and labor foreman, Joey Castelli. (*Id.* ¶ 32.) Both Santorufo and Castelli worked for Barr & Barr for years before the CRC subcontract was active – Santorufo for 20 years and Castelli for "quite a long time." (*Id.* ¶¶ 33, 38.) Although CRC appeared as the payor on Santorufo's and Castelli's pay stubs while the subcontract was active, Santorufo and Castelli continued to report to Barr & Barr directly, and their duties did not change. (*Id.* ¶¶ 36, 37, 39.) For example, Santorufo and Castelli supervised and controlled Barr & Barr employees who worked at the Project. (*Id.* ¶ 41.)

In August 2018, Capitol Fire Sprinkler ("Capitol"), a fire protection company, entered into a subcontract agreement with Barr & Barr to provide fire protection services for the Project ("Barr-Capitol Subcontract"). (*Id.* ¶ 26.) At some point before November 6, 2018, Plaintiff issued an insurance policy to Capitol for the policy period November 6, 2018 to November 6, 2019 (the "Travelers Capitol Policy"). (*Id.* ¶ 53.) The Travelers Capitol Policy contained a Blank Additional Insured endorsement that provided additional insured coverage "if and only to the extent that, the injury . . . is caused by acts or omissions of [Capitol]." (*Id*. ¶ 54.) Plaintiff also issued a commercial excess policy to Capitol for the policy period November 6, 2018 to November 6, 2019, which provided additional insured coverage if the Barr-Capitol Subcontract required "that the insurance provided by this policy . . . apply on a primary basis or a primary and noncontributory basis." (*Id.* ¶ 56.) Under the Barr-Capitol Subcontract, Capitol agreed to

2

provide additional insured coverage for Barr & Barr and property owner JMDH, on a primary and non-contributory basis, under its commercial general liability and umbrella liability policies. (*Id.* ¶ 27.) Capitol also agreed to accept responsibility for defects in other work, of which it would notify Barr & Barr in writing, if Capitol proceeded with its own work prior to the remedy of those defects. (*Id.* ¶ 28.)

At some point before November 3, 2018, Defendant issued an insurance policy to CRC for the policy period November 3, 2018, to November 3, 2019 (the "SNIC CRC Policy"). (*Id.* ¶¶ 2, 50.) The SNIC Policy's Blanket Additional Insured provision provided additional insured coverage "only with respect to operations performed by or on behalf of [CRC]." (*Id.* ¶ 51.) And at some point prior to April 1, 2019, Plaintiff issued a general liability insurance policy to Barr & Barr for the policy period April 1, 2019 to April 1, 2020 (the "Travelers Barr Policy"). (*Id.* ¶ 1.)

Between October 11, 2019, and October 24, 2019, Max Stewart, a Capitol employee who worked at the Project, notified Barr & Barr Superintendent Santorufo about unsecured Masonite board. (*Id.* ¶ 19.) Barr & Barr was responsible for ensuring that Masonite was properly secured. (*Id.* ¶ 42.) CRC did not supervise or direct Santorufo's work or provide him with any tools or materials. (*Id.* ¶¶ 44–45.) CRC also had no foreman at the Project, and no one from CRC went to the Project to inspect the work. (*Id.* ¶ 46.) On October 25, 2019, Stewart was injured when he tripped over the raised edge of a Masonite board. (*Id.* ¶¶ 6, 15–16.) On October 26, 2020, Stewart filed an action against JMDH, Jetro, and Barr & Barr in New York State court ("Underlying Action")[2]. (*Id.* ¶ 6.) On or about November 13, 2020, Plaintiff accepted a tender by JMDH and Jetro to defend them in the Underlying Action under the Travelers Barr Policy. (*Id.* ¶ 20.)

---

[2] *Max Stewart v. JMDH Real Estate Offices, LLC, Jetro Holdings LLC and Barr & Barr, Inc.*, Index No. 159073/2020 (N.Y. Supr. Ct., N.Y. Cty.).

On July 9, 2021, Barr & Barr, Jetro, and JMDH (the "Barr parties") filed a Third-Party Complaint alleging that Capitol and CRC owed contractual and common law indemnification, contribution, and apportionment with respect to the claims at issue in the Underlying Action. (*Id.* ¶ 7.)  Specifically, the Barr parties alleged that Capitol's and CRC's negligence, carelessness, and recklessness caused or contributed to Stewart's injuries.  (*Id.* ¶¶ 23, 25.)

Between November 7, 2019, and July 20, 2021, Plaintiff sent a series of letters to CRC seeking CRC's agreement to provide additional insured coverage for the Barr parties.  (*Id.* ¶ 8.) In a March 10, 2022 letter, Defendant responded that the Barr parties would only qualify as additional insureds under the SNIC-CRC policy if there is "a determination that liability for Mr. Stewart [sic] injuries resulted from operations performed by or on behalf of CRC."  (*Id.* ¶ 9.) Defendant acknowledged that some of the allegations in the Underlying Action, if proven, could fall within the scope of coverage provided under the policy.  (*Id.*)

Plaintiff seeks a declaration that Defendant owes additional insured coverage for the Barr parties under the SNIC CRC Policy.  (*Id.* ¶ 49.)  Defendant has filed a counterclaim against Plaintiff, seeking a declaration that Plaintiff owes additional insured coverage for the Barr parties under the Travelers Capitol Policy.  (*Id.* ¶ 52.)

## II.     STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138,

4

148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996). That is, the non-movant cannot survive summary judgment by relying on the same conclusory allegations set forth in her complaint. *See Murphy v. Lajaunie*, No. 13-CV-6503, 2016 WL 1192689, at *2 (S.D.N.Y. Mar. 22, 2016) (citing *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)).

### III. DISCUSSION

#### A. Duty to Defend

The motions before the Court concern each party's duty to defend the Barr parties in the Underlying Action pursuant to an additional insured endorsement. Because the parties apply the substantive law of the forum state, New York, to the issues, "their consent concludes the choice of law inquiry." *Texaco A/S (Denmark) v. Com. Ins. Co. of Newark*, NJ, 160 F.3d 124, 128 (2d Cir. 1998) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). New York law subjects insurance agreements to the ordinary "principles of contract interpretation," "giv[ing] full force and effect" to all contractual provisions and construing unambiguous provisions in line with "their plain and ordinary meaning." *Burlington Ins. Co. v. NYC Transit Authority*, 29 N.Y.3d 313, 321, 323 (N.Y. 2017) (internal quotation marks omitted);

5

*White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (N.Y. 2007). The interpretation of unambiguous insurance agreement provisions is a matter of law for the court. *Burlington Ins.*, 29 N.Y.3d at 321.

"In New York, an insurer's duty to defend is 'exceedingly broad' and distinct from the duty to indemnify." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (N.Y. 2006)). Generally, an insurer may refuse to defend "only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82 (2d Cir. 2013) (alterations in original) (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (N.Y. 1985)). In other words, an insurer must defend an insured if a "reasonable possibility" of recovery under the policy exists pursuant to either (a) the allegations in the underlying action or (b) the insurer's actual knowledge of the facts. *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65–66 (N.Y. 1991). "This standard applies equally to additional insureds and named insureds." *Regal Const. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 37 (N.Y. 2010) (citation omitted).

An underlying complaint is "the significant and usual touchstone for determining" an insurer's duty to defend, although its allegations are not controlling. *Axis*, 2021 WL 3912562, at *4 (citation omitted). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Id.* (citing *Schwamb v. Fireman's Ins. Co. of Newark, NJ*, 41 N.Y.2d 947, 949 (N.Y. 1977) ("So long as the claims, even though predicated on debatable or even untenable

6

theory, may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend."). As relevant here, this standard also extends to a third-party complaint brought in the underlying action by the plaintiff in the coverage action. *Axis*, 2021 WL 3912562, at *4 (citing *All State Interior Demolition Inc. v. Scottsdale Ins. Co.*, 168 A.D.3d 612, 613 (N.Y. App. Div., 1st Dep't 2019). "Any doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 141 (2d Cir. 2014). The Court addresses in turn each party's duty to defend the Barr parties in the Underlying Action.

### 1.     Defendant's Duty to Defend

Plaintiff argues that the Blanket Additional Insured endorsement of the policy Defendant issued to CRC, which includes operations performed "by or on behalf of" CRC, triggers Defendant's duty to defend the Barr parties in the Underlying Action. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 9–13, ECF No. 28.) The Court agrees. "Courts applying New York law interpret . . . [additional insured] endorsement[s] to trigger coverage where the named insured's operations are alleged to have proximately caused the bodily injury for which coverage is sought." *Axis*, 2021 WL 3912562, at *5 (citing *Burlington*, 29 N.Y.3d at 324–25) (2017)). Thus, if there exists a "reasonable possibility" that the proximate cause of Stewart's injury was CRC, Defendant is obligated to defend [the Barr parties]." *See Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 324 n.4 (S.D.N.Y. 2020) ("[i]f there is no reasonable possibility that the proximate cause of Claimant's injury was [the named insured] . . . [the named insured's insurer] would not be obligated to defend [the purported additional insured].")

7

Here, there is no dispute that the Barr parties' third-party complaint in the Underlying Action alleges that CRC's operations proximately caused the injury for which Stewart seeks relief. Indeed, the third-party complaint alleges that CRC "constructed, owned, operated, maintained, directed and/or controlled the objects, materials, work, and/or instrumentalities allegedly involved in the . . . alleged accident." (Third-Party Compl. ¶¶ 20-21, ECF No. 23-6.) The third-party complaint further states that CRC's "negligence, carelessness, [and] recklessness . . . caused . . . or contributed to the injuries alleged" in the Underlying Action. (*Id.* ¶ 57.) The "allegations in the [third-party] complaint fall within the risk covered by the [SNIC-CRC] policy." *See Axis*, 2021 WL 3912562, at *5 (citing *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 669 (N.Y. 1981)). Accordingly, Defendant's duty to defend is triggered.

In opposition, Defendant attempts to make much ado of the way the parties in the instant action characterized CRC's role in the Project. Specifically, Defendant argues that because the parties in this action do not dispute that CRC conducted no operations and performed no work at the Project (56.1 ¶¶ 44, 46), the actions that gave rise to Stewart's injuries could not possibly have been performed "by or on behalf of CRC." (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem. at 13, ECF No. 29.) Defendant's argument is unavailing. Indeed, Defendant clearly fails to appreciate that it is the allegations in the Underlying Action that form "the touchstone for determining" its duty to defend. *Axis*, 2021 WL 3912562, at *4 (citation omitted). This is so no matter how "groundless, false or baseless" those allegations may be. *Id.* (citing *Schwamb*, 41 N.Y.2d at 949). And here, the allegations set forth in the Barr parties' third-party complaint squarely place CRC within the ambit of liability for Stewart's injuries.

Next, Defendant insists that its insured, CRC, cannot be liable for the work of Barr & Barr's superintendent and foreman because the superintendent and foreman were "special

8

employees" of Barr & Barr. (Def.'s Mem. at 15.) Defendant directs the Court to cases in which New York courts found that where there is a special employer, who "controlled and directed" work, and there is also a "general employer" who is not directly involved in the work, the special employer is liable for any negligence of the special employees. (*Id.*) Defendant urges the Court to view it as a general employer, which "as just a payroll operation . . . that drew its employees from the union and would then process the payroll," is not liable for the negligence of Barr & Barr's purported special employees. (*See id.* (citing *O'Connell Electric Company v. Murnane/Kennedy*, 252 A.D.2d 851 (3d Dept. 1998).) The Court declines to do so.

  The special employment analysis that Defendant undertakes is inapposite here. Tellingly, not a single case that Defendant cites to support this argument reflects a court's assessment of whether an additional insured provision triggers an insurer's duty to defend. (*Id.* (citing *Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553 (1991) (setting forth factors a court should consider in determining whether a special employment status existed in worker's compensation action); *O'Connell*, 252 A.D.2d 851 (determining whether special employment status existed where parties disputed whether general contractor or construction workers were liable for property damage at worksite); *Maldonado v. Canac Int'l, Inc.*, 685 N.Y.S.2d 715, 716 (N.Y. App. Div. 1999) (considering whether a plaintiff who received his pay from a temporary employment agency was a special employee of the corporation to which he was assigned)). As Plaintiff aptly argues, whether Barr & Barr was the superintendent's and foreman's "special employer" at the Project has no bearing on whether allegations presented in the Underlying Action point to CRC as a cause of Stewart's injuries. (Pl.'s Reply Mot. for Summ. J ("Pl.'s Reply") at 2, ECF No. 30). It follows, therefore, that whether there exists a special employment relationship between Barr & Barr and the superintendent and foreman is of no import in

assessing Defendant's obligation under the SNIC-CRC policy. *See Lafarge Bldg. Materials, Inc. v. J. Hall Ltd.*, 3 A.D.3d 651, 652 (3d Dept. 2004) ("a factual issue as to whether an employee of the insured has become a special employee of the additional insured does not preclude coverage under the endorsement"); *Fed. Ins. Co. v. Ryder Truck Rental, Inc.*, 82 N.Y.2d 909, 912 (1994) (holding that the finding that a truck driver was a special employee of a trucking services company had no impact on whether the trucking services company's primary coverage policy was triggered). Simply put, Defendant fails to reject its duty to defend the Barr parties in the Underlying Action.

### 2. Plaintiff's Duty to Defend

Defendant argues that Plaintiff has a duty to defend the Barr parties in the Underlying Action under the terms of the general liability policy it issued to Capitol, which provides additional insured coverage "if and only to the extent that the injury . . . is caused by acts or omissions of [Capitol]." (Def.'s Mem. at 21–23.) The Court agrees. Here, too, the Barr parties' third-party complaint presents a "reasonable possibility" that the proximate cause of Stewart's injury was Capitol, such that Plaintiff is obligated to defend" the Barr parties. *See Charter Oak*, 462 F. Supp. 3d at 324 n.4 (S.D.N.Y. 2020). There is no dispute that in the Underlying Action alleges that CRC performed work at the Project "constructed, owned, operated, maintained, directed and/or controlled the objects, materials, work, and/or instrumentalities allegedly involved in the . . . alleged accident." (Third-Party Compl. ¶¶ 16-17.) The third-party complaint further states that CRC's "negligence, carelessness, [and] recklessness . . . caused . . . or contributed to the injuries alleged" in the Underlying Action. (*Id.* ¶ 37.) Plaintiff therefore faces a reasonable possibility that its named insured, Capitol, faces liability for creating the condition that caused Stewart's injuries.

10

In opposition, Plaintiff only argues that the identical assertions asserted against CRC and Capitol render the third-party complaint an unreliable basis from which to impose any duty to defend upon Plaintiff. (Pl.'s Reply Mot. for Summ. J. at 5, ECF No. 30.) Plaintiff directs the Court to *New York Marine & General Insurance Company v. The Travelers Property Casualty Company of America*, where the court declined to impose a duty to defend, noting that it must consider "facts that are pleaded in the Underlying Third-Party Complaint, not the conclusory assertions . . . to determine if they suggest a reasonable possibility of coverage." 632 F.Supp.3d 303, 308 (S.D.N.Y. 2022) (citation and internal quotation marks omitted.) That case is easily distinguishable. There, the court found that a "mention[] . . . only in passing" that a subcontractor had performed work at a project was insufficient to sustain a reasonable possibility of proximate cause liability for injuries alleged. *Id.* The *New York Marine* court specifically noted that the underlying complaint failed to allege that the subcontractor was responsible for the conditions that led to the plaintiff's injury. *Id. New York Marine* is not instructive, or even persuasive, here, where the third-party complaint indisputably alleges that Capitol contributed to the conditions that caused Stewart's injuries. And Plaintiff cites no authority to support its argument that similarity between allegations against subcontractors undermines the reasonable possibility of liability. Accordingly, Plaintiff fails to reject its duty to defend the Barr defendants in the Underlying Action.

11

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part.  Defendant's motion for summary judgment is GRANTED.   The Court declares that each party has a duty to defend the Barr parties in the Underlying Action.[3]

                                                          SO ORDERED.

Dated: March 31, 2025                             /s/ LDH
Brooklyn, New York                                L aSHANN D eARCY HALL
                                                  United States District Judge

---

[3] Because both parties are directed to defend the Barr parties, the Other Insurance provisions cancel each other out, resulting in an evenly split defense.  *See Sport Rock Int'l v. American Cas. Co. of Reading*, 65 A.D.3d 12, 19 (1st Dept. 2009).  As Defendant points out, both provisions provide that only if primary and noncontributory insurance is required, then each policy is excess to all other insurance, except for insurance on which the additional insureds are the named insureds.  (Def.'s Mem. at 24.)  Where, as here, "each policy contains an excess 'other insurance' clause, so that giving each policy's clause effect would leave the insured without primary insurance, the clauses are deemed to cancel each other out, and the insurers are required to cover the loss on a pro rata basis."  *See Sport Rock Int'l*, 65 A.D.3d at 19 (1st Dept. 2009).